**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| DAVID MULHOLLAND and MEGAN MULHOLLAND, | : : : : | |
| Plaintiffs, | : : | |
| | : | Civil Action No. 09-4322 (JAP) |
| v. | : : | |
| THOMAS JEFFERSON UNIVERSITY HOSPITALS, et al. | : : : | **OPINION** |
| Defendants. | : : | |

---

PISANO, District Judge.

Presently before the Court is a motion by defendants, Thomas Jefferson University

Hospitals, Inc., Jefferson University Physicians, Cataldo Doria, M.D., Jean Novak, BSN, and

James F. Burke, Jr., M.D., to dismiss the complaint for failure to comply with New Jersey's

Affidavit of Merit statute, N.J.S.A. 2A:53A-27.  Plaintiffs David and Megan Mulholland

("Plaintiffs") oppose the motion as to defendants Dr. Doria, Dr. Burke and Thomas Jefferson

University Hospitals, Inc. (the "Hospital," together with Drs. Doria and Burke,

"Defendants").[1]  The Court decides this matter without oral argument pursuant to Federal

Rule of Civil Procedure 78.  For the reasons set forth below, the motion to dismiss is granted.

---

[1] As discussed below, Plaintiffs have abandoned all claims except their informed consent claim against Drs.
Doria and Burke and their fraudulent misrepresentation claim against Thomas Jefferson University Hospital.  Pl.
Brf. at 2.

## I.      Background

According to the First Amended Complaint, Plaintiff David Mulholland ("Plaintiff")
was diagnosed with polisistic kidney disease in 1987.  First Am. Compl. ¶ 1.  In March 2007,
a co-worker agreed to donate a kidney to Plaintiff, and the process of planning for the
transplant took place during spring and summer of that year.  *Id.* ¶ 2-3.  Blood tests were done
on Plaintiff, which showed that Plaintiff was positive for the HHV-6 virus.[2]  *Id.* ¶ 5, 7-8.
Plaintiff alleges that none of the defendants advised him "about his HHV-6 positive status,
nor discussed or informed him about the medical implications of his positive status to the
success of the transplant."  *Id.* ¶ 9.

The blood work done on Plaintiff also showed that Plaintiff tested negative for the
CMV virus.[3]  *Id.* ¶ 10.  However, blood test showed that the donor was positive for the CMV
virus.  *Id.*  After the transplant surgery, Plaintiff began "suffering symptoms of CMV virus
and tested positive for the virus."  *Id.* ¶ 11.  Plaintiff did not learn that his donor had tested
positive for CMV until sometime in or about January 2008, after undergoing surgery.  *Id.* ¶
13.  Plaintiff's wife, co-plaintiff in this action, tested negative for the CMV virus prior to the
transplant surgery but contracted the virus from Plaintiff following the surgery.  *Id.* ¶ 12.
According to Plaintiff, if he had been advised by defendants of the donor's positive CMV
blood test result or his own positive HHV-6 result, he would have chosen to receive a kidney
from his wife rather than the donor.  *Id.* ¶ 16.

Plaintiffs filed this suit in August 2009 and filed an amended complaint in August
2010.  Defendants answered the amended complaint and, thereafter, filed this motion alleging

---

[2] The Court presume Plaintiff is referring to human herpesvirus 6.  *See* http://www.cdc.gov/
ncidod/EID/vol10no4/03-0587.htm.
[3] The Court presume Plaintiff is referring to cytomegalovirus.  *See* http://www.cdc.gov/cmv/index.html

that Plaintiff failed to comply with the Affidavit of Merit statute.  In their brief opposing the motion, Plaintiffs explain that after initiating this suit against the Defendants, Plaintiffs' counsel approached various doctors in order to obtain an affidavit of merit, and at least two doctors declined the request.  As explained by Plaintiffs, counsel discussed the issue with two licensed physicians: Dr. Phillip Paparone, an infectious disease physician, and Dr. Nasser Youseff, the Director of Kidney Transplant at Our Lady of Lourdes Medical Center.  Pl. Brf. at 7-8.  According to Plaintiffs, both physicians refused to sign an affidavit of merit because they suggested that a donor being positive for CMV is so common that it would not cause a specific professional obligation to inform a transplant patient about the risk of infection.  *Id.*

Ultimately, Plaintiffs were successful in obtaining an affidavit of merit from Dr. Neal Rehberg, a physician in West Virginia, who practices family medicine.  Def. Motion to Dismiss Exh. B.  The affidavit provided by Dr. Rehberg addresses only the conduct of Dr. Doria and another physician who is not a party to this case.  According to Defendants, this affidavit was provided on January 5, 2011.

Plaintiffs' First Amended Complaint contains five counts: Count One – "Lack of Informed Consent"; Count Two – "Assault and Battery"; Count Three – "Professional Malpractice"; Count Four – "Negligence"; and Count Five – "Fraudulent Misrepresentation".  In Plaintiffs' opposition to Defendants' motion, they indicate that they are abandoning all but two counts.  *Id.* at 2.  They intend to proceed with: (1) lack of informed consent against Dr. Doria and Dr. Burke based upon the failure to provide informed consent; and (2) fraudulent misrepresentation against Thomas Jefferson University Hospital for their alleged participation in the informed consent process.  The Court, therefore, dismisses the abandoned claims and

address this motion only as to the remaining informed consent and fraudulent

misrepresentation claims.

## II.     Discussion

Defendants first argue that the affidavit of merit provided by Plaintiff was untimely.

Defendants' answer was filed on August 30, 2010.  Plaintiffs provided their affidavit of merit

128 days later, on January 5, 2011.  Defendants also argue that the affidavit provided, which

is expressly "focused" only on Dr. Doria, is not in compliance with the Affidavit of Merit

statute because Dr. Rehberg, who is not a surgeon, is not qualified to provide an affidavit as to

the claims against Dr. Doria.  In response, Plaintiff argue that an affidavit of merit is not

required for their claims and, even if one is required, their affidavit substantially complies

with the statute.   As discussed below, the Court finds that an affidavit of merit is required for

each of Plaintiffs' claims, and the affidavit of merit provided for the claims against Dr. Doria

is not in compliance with the relevant statute.

## A.     Requirement of an Affidavit of Merit

Under the Affidavit of Merit Statute, when filing an "action for personal injuries …

resulting from an alleged act of malpractice or negligence by a licensed person in his

profession or occupation," a plaintiff must provide, within 60 days of a defendant's answer to

the complaint, an affidavit to each defendant by an "appropriate licensed person," indicating

that there is a "reasonable probability" that the defendant's conduct fell outside the acceptable

norms or standards of the profession.[4]  N.J.S.A. 2A:53A-26 *et seq*.  Upon a finding of good

cause, the court may grant a plaintiff one additional 60 day period.  N.J.S.A. 2A:53A-27.[5]

---

[4] Plaintiff may provide a sworn statement in place of an affidavit indicating: "the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of

An affidavit is only required if the underlying factual allegations of plaintiff's claim require proof of malpractice—that the defendant's conduct deviated from a professional standard of care for his or her profession. *Couri v. Garner*, 173 N.J. 328, 340-41 (2002) (holding that the affidavit of merit statute was not applicable to plaintiff's breach of contract claim because the underlying facts of the case did not require a proof of a deviation from a professional standard of care applicable to that specific profession.) "[B]y asking whether a claim's underlying factual allegations require proof of a deviation from *professional* standard of care, courts can assure that claims against licensed professionals acting in a professional capacity that require proof of ordinary negligence but not of a deviation from professional standards are not encompassed by the statute." *Id.* at 340-41 (emphasis in original). A plaintiff's failure to provide an affidavit of merit is considered a failure to state a cause of action. N.J.S.A. 2A:53A-29.

---

the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request." N.J.S.A. 2A:53A-28. Plaintiff have not provided such a statement here.

[5] The statute states as follows:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27.

The statute contains specific requirements regarding who is an "appropriate licensed person" in cases involving a medical professional who is a recognized specialist.  As relevant to this case, the statute provides that in cases of medical malpractice,

> If the party against whom [the affidavit of merit] is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties … and the care or treatment at issue involves that specialty …, the person providing the [affidavit of merit] shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty … .

N.J.S.A. 2A:53A-41.

**B.      An Affidavit of Merit is Required for Plaintiffs' Claims**

1.      <u>Claims against Dr. Doria and Dr. Burke</u>

Relying on the common knowledge exception to the affidavit of merit requirement, Plaintiffs first argue that an affidavit of merit is not required for the claims against Dr. Doria and Dr. Burke.  The Court disagrees.

Plaintiffs' claims rest on their allegations that Defendants failed to inform Mr. Mulholland that he tested positive for HHV-6 and that the living donor tested positive for CMV in the blood tests done prior to the transplant surgery and, consequently, Mulholland's consent to the transplant surgery was not "informed."  A tort based on a lack of informed consent recognizes a separate duty, emphasizing the physician's obligation to inform, as well as treat, the patient.  *Matthies v. Mastromonaco*, 160 N.J. 26, 39, 733 A.2d 456 (1999).  The New Jersey Supreme Court has recognized that "[t]he underlying basis for the doctrine of informed consent is a patient's right of self-determination, the right to intelligently decide whether to choose or decline a particular medical procedure." *Acuna v. Turkish*, 192 N.J. 399, 414-415, 930 A.2d 416 (2007).  The standard for informed consent focuses on what a reasonable patient, given the risks of a medical procedure, would likely find significant to

know in order to make an informed decision regarding the procedure.  *Id*. at 415 (citing

*Matthies v. Mastromonaco*, 160 N.J. 26).

Under the common knowledge exception, an affidavit of merit is not required in a

professional negligence case if jurors can determine a defendant's negligence without needing

an expert to demonstrate that a defendant breached a duty of care.  *Hubbard v. Reed*, 168 N.J.

387, 394 (2001) (holding that under the common knowledge exception to the Affidavit of

Merit statute, a lay person could use their common knowledge in determining whether a

dentist was negligent in pulling the incorrect tooth of plaintiff).  The common knowledge

exception applies when the "jurors' common knowledge as lay persons is sufficient to enable

them, using ordinary understanding and experience, to determine a defendant's negligence

without the benefit of the specialized knowledge of experts."  *Id.*  (quoting *Estate of Chin v.*

*Saint Barnabas Med. Ctr.,* 160 N.J. 454, 469 (1999)).

Plaintiffs base their argument on the holding of *Largey v. Rothman*, 110 N.J. 204, 213

(1988), which adopted the "prudent patient" standard in place of a "professional standard" to

establish what "material risks" a doctor must disclose to a patient to obtain the patient's

informed consent to particular treatment.  However, in *Febus v. Barot*, 260 N.J. Super. 322,

327 (App. Div. 1992), the court held that "the prudent patient standard does not always

dispense entirely with the need for expert medical testimony in an informed consent case."

The *Febus* court also stated that while "under this doctrine, no medical expert is required to

prove that an undisclosed risk would have been material to the patient's consent, it must first

be shown that the risk was one of which the physician should have been aware, and that it was

recognized within the medical community." *Id.*  Moreover, as noted recently by the New

Jersey Appellate Division, "although medical malpractice claims involving a deviation from a

standard of care and claims alleging failure to obtain informed consent are based on 'different

theoretical underpinnings,' it is clear that they 'are simply sub-groups of a broad claim of

medical negligence.' *Hahn v. Bergen Regional Medical Center*, 2011 WL 2472694, *4 (N.J.

Super. App. Div. 2011) (quoting *Howard v. Univ. of Med. & Dentistry of N.J.*, 172 N.J. 537,

545 (2002).

 To establish their informed consent claim, Plaintiffs here must demonstrate that the

Defendants withheld medical information that a reasonably prudent person in like

circumstances would have considered to be material before consenting to a kidney transplant.

*See Acuna v. Turkish*, 192 N.J. 399, 415 (2007).   Expert medical testimony would be required

to, for example, explain what the CMV and HHV-6 viruses are, the risks recognized by the

medical community of undergoing a kidney transplant from a donor who has tested positive

for CMV, the risks recognized by the medical community for a patient undergoing a kidney

transplant while testing positive for HHV-6, and to what extent a physician performing a

kidney transplant should be aware of any such risks.  These kind of issues are not within the

common knowledge of a layperson and, therefore, the Court concludes that an affidavit of

merit is required in this case.

2. Claim Against the Hospital

 Plaintiffs contend that an affidavit of merit is not required for their fraudulent

misrepresentation claim against the Hospital because the claim is one for fraud and not

professional negligence.  However, an affidavit of merit is required in any tort or contract

claim "if the claim's underlying factual allegations require proof of a deviation from the

professional standard of care applicable to that specific profession." *Couri v. Gardner*, 801

A.2d 1134, 1141.  Plaintiffs allege that the Hospital intentionally withheld information

regarding the positive CMV status of the donor because Mr. Mulholland was not adequately educated to understand the risks of contracting an infection from the surgery.  Compl. at 11, ¶ 4.  However, this allegation necessarily involves the issue of whether defendants acted in accordance the applicable standard of care in providing informed consent to Mr. Mulholland—an issue that cannot be addressed without an affidavit of merit from an appropriately licensed physician.  Consequently, because the factual underpinnings for the claim relates to the professional judgment exercised by the defendants, the Court finds that an affidavit of merit is required to maintain the claim.

**C.      Plaintiffs Did Not Provide A Proper Affidavit of Merit**

Plaintiffs next argue that under the equitable doctrine of substantial compliance their affidavit of merit is in compliance with the relevant statute.  However, the Court finds that the doctrine of substantial compliance cannot excuse the deficiencies in Plaintiffs' affidavit.  Even if the Court were to consider Plaintiffs' affidavit timely, the Court does not find that Plaintiffs' affidavit substantially complies with the requirements of the Affidavit of Merit statute, particularly the requirement that the affidavit be executed by an "appropriately licensed person."  N.J.S.A. 2A:53A-27.

As an initial matter, the only defendant that the affidavit is directed to is Dr. Doria.  Therefore, Plaintiffs, having failed to provide an affidavit of merit as to the other defendants, have failed to state a claim against those other defendants.  Furthermore, Dr. Neal Rehberg, a specialist in family medicine, is not an "appropriate licensed person" to execute an affidavit of merit as to the claims against Dr. Doria, who is a specialist in surgery and subspecialist in surgical critical care.  Pursuant to N.J.S.A. 2A:53A-27 and -41, Plaintiffs were required to obtain an affidavit from a licensed professional in the same specialty or sub-specialty as Dr.

9

Doria.  Dr. Rehberg is not a surgeon, but rather states that he has "routinely practiced in many aspects of Family Medicine and [is] familiar with the protocol and duties relating to providing a patent with informed consent."  Affidavit at 2.  This is not sufficient.

Citing *Jorden v. Glass*, 2010 WL 786533, \*3 (D.N.J. 2010), Plaintiff argues that Dr. Rehberg is qualified to provide the affidavit.  The decision in *Jorden* recognized that if the care and treatment underlying a malpractice claim against a medical professional does not involve the defendant's specialty, then the statute does not require an affidavit from a professional practicing that same specialty.  *See* 2A:53A-41 (affiant must be specialist if "the party against whom [the affidavit of merit] is offered is a specialist or subspecialist … *and the care or treatment at issue involves that specialty* …).  Here, Plaintiff asserts that the instant case "does not involve the skill, knowledge, or competency involved in performing a kidney transplant, but rather, the generalized function that transcends all specialists and general practitioners alike, and that is the duty of providing informed consent to their patients."  Pl. Brf. at 24.  This assertion is nonsense.  Certainly there is a difference between informed consent for a flu shot and informed consent for a kidney transplant.  Even if Dr. Rehberg has general medical knowledge of the CMV and HHV-6 viruses, there is no evidence that he has expertise as to how the viruses relate to the risks involved in kidney transplant surgery.  His affidavit does not, therefore, meet the statutory requirements for bringing a claim against Dr. Doria.

**III.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss shall be granted.  An

appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  August 4, 2011